IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | |
| v. | : | Criminal Action No. 08-97-JJF |
| MICHAEL LINDSEY, | : | |
| Defendant. | : | |

David C. Weiss, Esquire, Acting United States Attorney, and Geoffrey G. Grivner, Esquire, Assistant United States Attorney, of the OFFICE OF THE UNITED STATES ATTORNEY, Wilmington, Delaware.

Attorney for Plaintiff.

Peter A. Levin, Esquire of PETER A. LEVIN, ESQUIRE, Philadelphia, Pennsylvania.

Attorney for Defendant.

**MEMORANDUM OPINION**

February 27, 2009
Wilmington, Delaware

Farnan, District Judge.

Pending before the Court are two motions filed by Defendant, Michael Lindsey, a Pre-trial Motion To Suppress Physical Evidence And Statements (D.I. 12) and a Motion To Disclose Information Regarding Confidential Informants and Supporting Authorities (D.I. 13). For the reasons discussed, the Court will deny both of Mr. Lindsey's Motions.

I. **BACKGROUND**

On July 1, 2008, Defendant, Michael Lindsey, was indicted on one count of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 942(a)(2). On July 24, 2008, Mr. Lindsey filed the instant Motions. Shortly thereafter, Mr. Lindsey's original counsel withdrew her representation, and new counsel was appointed for Mr. Lindsey. The Court conducted an evidentiary hearing on December 1, 2008, and counsel for both parties stipulated to a briefing schedule for these Motions. On February 12, 2009, briefing on the pending Motions was completed.

By his Motion To Suppress, Mr. Lindsey contends that the search of his vehicle was unlawful, because (1) the initial stop of the vehicle was not supported by reasonable suspicion, and the tips provided by two confidential informants were not reliable, and (2) Mr. Lindsey was not a "recent occupant" of the vehicle as required to justify a search of the passenger compartment incident to arrest. Mr. Lindsey also contends that he was

1

unlawfully arrested because the arresting officer lacked probable cause to believe Mr. Lindsey was engaged in criminal conduct.

With respect to his Motion To Disclose Information Regarding Confidential Informants, Mr. Lindsey contends that he is entitled to know the identities of the confidential informants whose information led police to conduct surveillance of Mr. Lindsey. Mr. Lindsey contends that the failure to disclose the identities of the confidential informants violates both his right to confront witnesses under the Fourth Amendment and his right to be free from arrests that lack probable cause under the Sixth Amendment.

The Government has filed a response to Mr. Lindsey's Motion To Suppress contending that the stop and arrest of Mr. Lindsey was supported by probable cause based on both the arresting officer's personal observations of Mr. Lindsey preceding the stop, as well as by his knowledge that Mr. Lindsey was driving with a suspended driver's license and had active capiases issued against him. The Government further contends that the search of the vehicle following Mr. Lindsey's arrest was lawful under the automobile exception to the warrant requirement and as a search incident to arrest.

In response to his Motion To Disclose Information Regarding Confidential Informants, the Government contends that Mr. Lindsey has not demonstrated that disclosure of the informants'

2

identities is warranted. The Government contends that any information provided by the informants was confirmed by Agent Riley's observations at the scene, and therefore, the identities of the informants are not needed to adjudicate the Motion To Suppress.[1]

## II.  FINDINGS OF FACT

1.  On June 9, 2008, at about 5:45 p.m., Agent Todd Riley, an agent of the Drug Enforcement Administration ("DEA"), was conducting undercover surveillance in the Riverside area of Wilmington near 23rd and Bower Streets.  (D.I. 27, Hearing Tr. 12/1/08 ("Tr.") at 4-5.)

2.  Agent Riley was in this area on June 9, looking for Mr. Lindsey based on information he received from Detective Fox and a confidential informant during the previous two week period concerning Mr. Lindsey's propensity to carry firearms.  (Tr. at 11-12, 15-17.)  Specifically, Agent Riley learned two weeks prior that Mr. Lindsey was parked near 28th Street in the Riverside Section of Wilmington and was seen wrapping a handgun up in a tee shirt and placing it into his vehicle, before entering a

---

[1] The Court further notes that, at the completion of the evidentiary hearing, defense counsel, on behalf of Mr. Lindsey, moved for a Franks hearing based upon the affidavit of probable cause prepared by Detective Rosenblum. See infra ¶¶ 12-15.  The Court denied the Motion for a Franks hearing on the grounds that a Franks hearing challenging an affidavit of probable cause requires, in the first instance, a search warrant and no search warrant was procured in this case.

3

residence in the area. (Tr. at 12.) At the time he received this information, Agent Riley did not get a search warrant to search Mr. Lindsey's car or the residence. (Tr. at 12-13, 22.) Agent Riley was with his partner, Agent Cunningham. The two agents ran a computer check on Mr. Lindsey and discovered that he was driving without a license and that there were active capiases against him. Agent Riley also learned of Mr. Lindsey's arrest history, including information that he was a prior convicted felon. (Tr. at 6, 13, 18, 32, 43.) Surveillance was set up on Mr. Lindsey's vehicle, but contact was lost. Thereafter, the investigation of Mr. Lindsey continued with officers checking prior addresses and possible girlfriends of Mr. Lindsey in an effort to locate his vehicle. (Tr. at 18-21.)

3. Earlier during the day of June 9, Agent Riley was contacted by Detective Cuadrado[2] of the Wilmington Police Department, who advised him that he had received specific information from a second confidential informant that Mr. Lindsey would be in the Riverside area that day for a softball game, that he had had an altercation with some other softball players in the past, and that he had made reference to a gun in his vehicle. (Tr. at 22-24.) Detective Cuadrado informed Agent Riley that the individual with whom Mr. Lindsey had the altercation would be

---

[2] In the Transcript and Mr. Lindsey's Opening Brief, Detective Cuadrado is referred to with the phonetic spelling, "Detective Cordrato."

playing in the softball game that night. (Tr. at 24.)

4. Based on this information, Agent Riley set up surveillance on June 9. (Tr. at 25.) During this surveillance, Agent Riley observed a red Dodge Intrepid, which he knew to be operated by Michael Lindsey, traveling northbound on Bowers Street. (Tr. at 6, 26.) As the vehicle passed Agent Riley, he confirmed that Mr. Lindsey was driving the vehicle. The vehicle also lacked a registration plate. (Tr. at 26.)

5. Using binoculars which made Mr. Lindsey appear to be approximately 10 to 15 feet away, Agent Riley observed Mr. Lindsey park the Intrepid, reach over and pull out a large, .44 caliber silver handgun. (Tr. at 7-8.) Mr. Lindsey showed the gun to two other individuals who were seated on the opposite side of the street and then put it back down in the direction of the passenger seat. (Tr. at 7-8, 27-28.) Mr. Lindsey then exited the vehicle and sat down with the two men. (Tr. at 8.)

6. Agent Riley called for assistance, and the assisting officers arrested Mr. Lindsey on both the active capiases, and his operation of a motor vehicle on a suspended license. (Tr. at 8-9, 29.)

7. After Mr. Lindsey was taken into custody, Agent Riley exited his vehicle and walked up to the Intrepid. He opened the unlocked passenger side door of the vehicle and observed a navy blue sweatshirt on the seat. Agent Riley lifted up the

5

sweatshirt and found a .44 caliber handgun, which he recognized to be the same gun he observed Mr. Lindsey holding. (Tr. at 9, 29, 35.)

8. At the time of the search of the vehicle, Mr. Lindsey was across the street, approximately 15 feet from the vehicle. In his testimony, Agent Riley agreed that Mr. Lindsey could not get back into the vehicle from that location to retrieve the gun. (Tr. at 30-31.)

9. The vehicle was transported to Wilmington Police Headquarters where an inventory search was conducted pursuant to Police Department guidelines. (Tr. at 34-35.)

10. Mr. Lindsey was also taken to Wilmington Police Headquarters where he was placed in an interview room. Mr. Lindsey was making a commotion in the room and banging his head against the wall. Agent Riley entered the room to calm him down and Mr. Lindsey told Agent Riley things like Agent Riley was killing him and that he was never going to see his babies again. Agent Riley got Mr. Lindsey a drink of water and told him to settle down. He then turned on audio and video tapes and advised Mr. Lindsey of his Miranda rights. (Tr. 36-39.)

11. After waiving his Miranda rights, Mr. Lindsey made a statement to Agent Riley. Mr. Lindsey informed Agent Riley that he was driving to a softball game when he reached under the driver's seat for some cigarettes. He indicated that he was

shocked to discover a large silver handgun, which he picked up with his sweatshirt and placed on the passenger seat of the car. Mr. Lindsey stated that he drove to the softball game and saw two of his teammates across the street. He then stated that he picked up the handgun and showed it to them saying, "Look what I found in my car." He then put the gun back down and exited the vehicle. (Tr. at 10.)

12.  No state charges were issued against Mr. Lindsey; however, federal charges based on felony possession of a firearm were brought against Mr. Lindsey in connection with the Operation Fed-Up Program. (Tr. at 40-41.)

13.  Following the testimony of Agent Riley, the defense called Detective Rosenblum as a witness. Detective Rosenblum is a Task Force Officer employed by the Wilmington Police Department and assigned to Operation Fed-Up. When an adult with a felony conviction is apprehended carrying a firearm, Detective Rosenblum is contacted to verify that the person is in fact a felon. If the person is a felon in possession of a prohibited weapon within the jurisdiction of the City of Wilmington Police Department, Detective Rosenblum assumes custody of the person. In connection with these duties, Detective Rosenblum prepares a federal affidavit of probable cause before taking the defendant before a federal magistrate judge. (Tr. at 45-46.)

14.  Detective Rosenblum prepared the affidavit of probable cause in Mr. Lindsey's case, based on information provided by Agent Riley.  (Tr. at 46.)

15.  Detective Rosenblum noted a mistake in his affidavit. Specifically, Detective Rosenblum stated that Mr. Lindsey placed the gun on the floorboard of the vehicle.  However, at the suppression hearing, Detective Rosenblum testified that he was mistaken and that Agent Riley's testimony concerning the placement of the gun on the passenger's seat was correct.  (Tr. at 47-48.)

16.  Detective Rosenblum attributed the error to having prepared the affidavit prior to receiving Agent Riley's report and having misunderstood some of the information provided by Agent Riley during phone calls.  Detective Rosenblum also testified that his report was paraphrasing some of what Agent Riley had told him.  (Tr. at 48-50.)

**III. CONCLUSIONS OF LAW**

1.  The Fourth Amendment to the United States Constitution protects "the right of the people to be secure against unreasonable searches and seizures. . . ."  U.S. Const, amend IV.

2.  Police are vested with the constitutional authority to conduct a limited, warrantless, investigatory stop in a public place if an officer has a reasonable suspicion of criminal activity.  <u>Terry v. Ohio</u>, 392 U.S. 1, 88 (1968).  During a <u>Terry</u>

stop, the temporary detention of individuals constitutes a "seizure" within the meaning of the Fourth Amendment. <u>Whren v. United States</u>, 517 U.S. 806, 809 (1996).

    3.    Reasonable suspicion to initiate a <u>Terry</u> stop requires that "the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." <u>United States v. Cortez</u>, 449 U.S. 411, 417-18 (1981). While Fourth Amendment jurisprudence demands particularized suspicion, courts also recognize that officers must be allowed "to draw on their experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." <u>United States v. Arvizu</u>, 534 U.S. 266, 273 (2002). Reasonable suspicion is to be viewed from the vantage point of a "reasonable, trained officer standing in [the detaining officer's] shoes." <u>Johnson v. Campbell</u>, 332 F.3d 199, 206 (3d Cir. 2003). Whether the police have reasonable suspicion is determined from the totality of the circumstances. <u>Cortez</u>, 449 U.S. at 417.

    4.    In this case, Mr. Lindsey challenges the legality of his stop under the reasonable suspicions standard announced in <u>Terry</u>. Specifically, Mr. Lindsey contends that the police did not have reasonable suspicion to detain Mr. Lindsey and search his vehicle based upon the anonymous tips of confidential informants. Mr.

Lindsey further challenges the credibility of Agent Riley's testimony on the grounds that Agent Riley's written report excludes information that Agent Riley knew that Mr. Lindsey was a convicted felon. If Agent Riley did not know that Mr. Lindsey was a convicted felon, Mr. Lindsey contends that his possession of the firearm observed by Agent Riley was not inherently illegal. Absent knowledge of his criminal history, Mr. Lindsey contends that a reasonable officer could not have known that Mr. Lindsey was engaged in criminal activity as a result of his possession of a firearm.

    5. Reviewing the testimony and evidence adduced at the hearing, the Court concludes that the stop and subsequent arrest of Mr. Lindsey were supported by reasonable suspicion and probable cause, respectively. Mr. Lindsey does not challenge Agent Riley's observation that Mr. Lindsey was in possession of a firearm. The primary question raised by Mr. Lindsey is whether Agent Riley knew, at the time of the observation, that Mr. Lindsey was a person prohibited from possessing a firearm. The Court credits the testimony of Agent Riley that he was familiar with Mr. Lindsey's criminal record prior to June 9th, and that he knew Mr. Lindsey was a convicted felon. The Court further finds that Agent Riley knew at the time of the stop and arrest of Mr. Lindsey that Mr. Lindsey was operating a motor vehicle without a valid driver's license and that Mr. Lindsey had active capiases

10

issued for his apprehension. These are facts which Agent Riley confirmed before initiating the arrest on June 9th. (Tr. at 39.) Based upon this information, the Court concludes that the detention and arrest of Mr. Lindsey was supported by reasonable suspicion, as well as the probable cause required to justify an arrest.

6. Having concluded that the stop and arrest of Mr. Lindsey were lawful based on the personal knowledge and observations of Agent Riley, the Court need not evaluate the credibility of the confidential informants' tips. See U.S. v. Williams, 403 F.3d 1188, 1194 & n.5 (10th Cir. 2005) (concluding that the reliability of an anonymous tip did not need to be decided, because the seizure and search of the defendant were justified by the conduct of the defendant, as observed by the officers, which gave them reasonable suspicion to believe he was armed and dangerous); U.S. v. Oates, 514 F. Supp. 2d 221, 226 & n.2 (D. Conn. 2007) (holding that an anonymous tip regarding the defendant's possession of a handgun need not be evaluated for reliability where other circumstances demonstrated reasonable suspicion and/or probable cause for stop and search, including the officers observation of defendant's traffic violation, the defendant's consent to search the car, and the narcotic dog's alert to the glove compartment).

7.  The Court further concludes that Agent Riley was under no obligation to arrest Mr. Lindsey prior to June 9.[3] Hoffa v. United States, 385 U.S. 293, 310 (1966) ("Law enforcement officers are under no constitutional duty to call a halt to a criminal investigation the moment they have the minimum evidence to establish probable cause, a quantum of evidence which may fall far short of the amount necessary to support a criminal conviction.").

8.  As for the search of Mr. Lindsey's vehicle, the Court concludes that Agent Riley was not required to obtain a warrant for two reasons. First, Agent Riley's first-hand observation of Mr. Lindsey, a known convicted felon, handling the gun and placing it in the direction of the passenger seat provided sufficient probable cause for the police to believe that the vehicle contained contraband or evidence of the crime. In these circumstances, the "automobile exception" to the warrant

---

[3] See also United States v. Johnigan, 90 F.3d 1332, 1337 (8th Cir. 1996) (holding that officers were not required, "upon learning of [defendant's] outstanding arrest warrants, to arrest him immediately while he was still at the hotel, rather than at the airport"); United States v. De Biasi, 712 F.2d 785, 795 (2d Cir. 1983) (holding that defendant was not constitutionally entitled to an arrest at the moment probable cause was developed and holding that there can be no objection to the timing of the arrest so long as probable cause existed); United States v. Ayers, 2003 WL 292086 (D. Del. 2003) ("The fact that two weeks elapsed from the initial finding that defendant may have violated the above cited Delaware laws until the day he was stopped on the off-ramp does not, alone, cause the court to pause on review of this stop.").

12

requirement applies, regardless of whether the vehicle was in police custody. United States v. Ross, 456 U.S. 798, 804-09 (1982); Michigan v. Thomas, 458 U.S. 259 (1982); see also Florida v. Meyers, 466 U.S. 380 (1984). Second, the Court concludes that the vehicle was lawfully searched incident to the lawful arrest of Mr. Lindsey. New York v. Belton, 453 U.S. 454, 460 (1981).

      9. Mr. Lindsey suggests that he was not a "recent occupant" of the vehicle because he had gotten out of the car and was across the street from the vehicle at the time of his arrest. Thus, Mr. Lindsey contends that he did not have a sufficient spatial relationship to the vehicle to justify a search of the vehicle incident to his arrest. In Thornton v. United States, the Supreme Court recognized that while an arrestee's status as a "recent occupant" may turn on his temporal or spatial relationship to the car at the time of the arrest and search, it certainly does not turn on whether he was inside or outside the car at the moment that the officer first initiated contact with him. 541 U.S. 615, 622 (2004) (rejecting petitioner's proposed "contact initiation" rule). In addition, the defendant in Thornton was already secured by police and placed in the back of the police car at the time of the search of his vehicle, yet the Supreme Court concluded that the search was lawful.[4] In this

---

    [4] The Court acknowledges that the Supreme Court has granted certiorari review in Arizona v. Gant, 128 S. Ct. 1443 (2008) to determine whether "the Fourth Amendment require[s] law

13

case, Mr. Lindsey was taken into custody fifteen feet from his vehicle and the search was conducted almost immediately after his arrest without the disruption of any intervening events. In these circumstances, the Court concludes that the search of Mr. Lindsey's vehicle was also lawful as a search incident to arrest. See, e.g., U.S. v. Richards, 2008 WL 3874302, *4 (D.V.I. Aug. 15, 2008) (rejecting an analysis that relies on the precise distance between a defendant and his car to make a "recent occupancy" finding because "a suspect could conceivably commit a crime, flee the scene, and run as far from the car as possible within a short period of time" to avoid having his car be subject to a search incident to arrest, and finding that this "result . . . could turn Thornton on its head and improperly narrow the definition of recent occupant").

10. With respect to Mr. Lindsey's Motion To Disclose Information Regarding Confidential Informants, the Court concludes that Mr. Lindsey has not demonstrated that disclosure of the informants' identities is necessary in this case. In United States v. Roviaro, 353 U.S. 53 (1957), the Supreme Court recognized that the Government retains the privilege to withhold

---

enforcement officers to demonstrate a threat to their safety or a need to preserve evidence related to the crime of arrest in order to justify a warrantless vehicular search incident to arrest conducted after the vehicle's recent occupants have been arrested and secured." However, a decision has not yet issued in Gant, and at this time, Thornton is controlling.

14

from disclosure the identity of confidential informants; however, that privilege is not absolute. "Where the disclosure of the informer's identity, or the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." Id. at 60-61.  Where, as here, the confidential informants are akin to tipsters, disclosure is generally not warranted.[5]  United States v. Jiles, 658 F.2d 194, 197 (3d Cir. 1981).  Mr. Lindsey connects the informants' identities first and foremost to the issue of probable cause raised by his suppression motion.  However, Agent Riley's first hand observations are sufficient to support the arrest of Mr. Lindsey and the search of his vehicle.  In these circumstances, Mr. Lindsey has not demonstrated that the identities of the informants are critical to his guilt or innocence, and therefore, the Court will not compel the Government to disclose the identities of the confidential informants.  See U.S. v. Marshall, 471 F. Supp. 2d 479, 484 (D. Del. 2007); Ayers, 2003 WL 292086 at *3-4.

---

[5]   Regardless of whether the informants are merely tipsters or individuals who fall within the third category of people to whom Roviaro is applicable (e.g. those people who fall between tipsters and the "the extreme situation" . . . in which the informant[s] ha[ve] played an active and crucial role in the events underlying the defendant's potential criminal liability"), the Court concludes that Mr. Lindsey has not demonstrated that the identities of the informants are essential to his defense. Jiles, 658 F.2d at 197.

15

## IV. CONCLUSION

For the reasons discussed, the Court will deny Mr. Lindsey's Pre-trial Motion To Suppress Physical Evidence And Statements and Motion To Disclose Information Regarding Confidential Informants and Supporting Authorities.

An appropriate Order will be entered.